# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

   At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of April, two thousand nineteen.

PRESENT:
    ROBERT A. KATZMANN,
      *Chief Judge,*
    JOSÉ A. CABRANES,
    SUSAN L. CARNEY,
      *Circuit Judges.*

_____

Stephanie Harvin,

    *Plaintiff-Appellant,*

    v.              18-1308

Manhattan and Bronx Surface Transit Operating Authority,

    *Defendant-Appellee.*

_____

FOR PLAINTIFF-APPELLANT:   Stephanie Harvin, pro se, Brooklyn, NY.

FOR DEFENDANT-APPELLEE:   Gregory M. Ainsley *for* James B. Henly, Vice President and General Counsel, New York City Transit Authority, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Amon, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Stephanie Harvin, pro se, sued her former employer, the Manhattan and Bronx Surface Transit Operating Authority ("Transit Authority"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, asserting failure-to-accommodate, discrimination, hostile work environment, and retaliation claims. She primarily alleges that her supervisors in the Transit Authority's payroll department, Wanda Amerson and Jacqueline Moore, harassed her, refused to accommodate her disability (rheumatoid arthritis, fibromyalgia, and bilateral carpal tunnel syndrome), and discriminated and retaliated against her. The district court dismissed her amended complaint for failure to state a claim. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).[1] The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court must accept as true all the factual allegations in the complaint, that requirement is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, and alterations.

## I.       Failure-to-Accommodate

The district court properly dismissed Harvin's failure-to-accommodate claims. "[A] plaintiff makes out a prima facie case of disability discrimination arising from a failure to accommodate by showing . . . [that] (1) [p]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96-97 (2d Cir. 2009).

We conclude that Harvin failed to plausibly allege that she requested reasonable accommodations for her disability. Harvin's March 2013 request to transfer back to scheduling, which required less typing, was unreasonable. The ADA provides that reassignment to a *vacant* position is a reasonable accommodation, but it does not require employers to create entirely new positions. *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 187 (2d Cir. 2006). The employee bears the burden of showing that a reasonable accommodation exists, including the existence of a vacant position for which she is qualified. *McBride*, 583 F.3d at 97. Harvin did not allege that there was an open position in scheduling in March 2013 when she asked to transfer.[2] To the extent Harvin also asserted that she should have been promoted as an accommodation, that also was not a reasonable accommodation. *See McBride*, 583 F.3d at 98. In addition, Harvin's request that other employees take on some of her work assignments—including the part-time employee payroll and

---

[2] Harvin also alleged that she requested to be transferred back to her former position on March 28, 2012, at which point the spot was vacant, and that this request was effectively denied two days later when the job was given to someone else. However, claims arising out of alleged adverse employment actions occurring more than three hundred days before Harvin filed her administrative charge with the New York State Division of Human Rights (that is, before December 15, 2012) are statutorily time-barred. *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010).

making checkmarks in the payroll—was not reasonable because that work was an essential function of her job. *See Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) ("A reasonable accommodation can never involve the elimination of an essential function of a job.").

Lastly, Harvin argues for the first time on appeal that Moore could have provided her with an ergonomic chair and keyboard. But Harvin did not allege that she requested these accommodations. We will not consider this claim. *See Virgilio v. City of New York*, 407 F.3d 105, 116 (2d Cir. 2005) (generally, this Court "refrain[s] from passing on issues not raised below").

## II.    Disparate Treatment

Claims alleging disparate treatment under the ADA are analyzed under the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Heyman v. Queens Village Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc.*, 198 F.3d 68, 72 (2d Cir. 1999). To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show: (1) her employer is subject to the ADA; (2) she is disabled within the meaning of the ADA; (3) she is otherwise qualified to perform the essential functions of her job with or without accommodation; and (4) she suffered an adverse employment action because of her disability. *See Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004).

Harvin failed to state a disparate treatment claim based on the denial of promotions. She conclusorily alleged that she was denied nine different promotions because of her disability, but Harvin sought to be promoted into positions for which she was not qualified because those positions required a bachelor's degree, which she did not have. While Harvin also alleged that she sought positions that permitted the applicant to satisfy the job requirements through a combination of experience and education, she did not allege any facts showing that she had the requisite experience or that the Transit Authority denied her these jobs because of her disability. Her conclusory

assertions are insufficient. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.").

Harvin's allegation that she was denied training, overtime, and tools also fails. She did not allege any facts showing that Moore denied her training or tools because of her disability. Similarly, Harvin noted that her computer was broken, but alleged no facts suggesting the computer problems or delay in resolving the issue were a result of her disability. Indeed, Harvin alleged that a computer assigned to another employee in the payroll department suffered from the same issues. Next, Harvin alleged she was given overtime only on Saturdays, while Amerson received it every day. However, Harvin alleged no facts to show that the discrepancy was because of her disability or that Amerson was a similarly situated employee. *See Shumway v. United Parcel Serv. Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (while similarly situated employees who receive different treatment can be evidence of discrimination, the employees "must be similarly situated in all material aspects"); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1996) (holding that similarly situated means being subject to the same performance standards and engaging in similar conduct).

Finally, Harvin alleged that Moore and Amerson were rude to her on two occasions in 2013. Although Harvin plausibly alleged that Moore and Amerson were rude to her, rudeness is not an adverse employment action and Harvin did not allege that she was ever formally disciplined by either Amerson or Moore, despite their criticism. *See Weeks v. New York State (Div. of Parole)*, 273 F.3d 76, 85-86 (2d Cir. 2001) (notice of discipline that had no material effect was not adverse for disparate treatment and retaliation claims), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Harvin did not allege that she was formally disciplined at any time. Therefore, the district court properly dismissed this claim.

### III.    Hostile Work Environment

This Court recently concluded that hostile work environment claims are cognizable under the ADA. *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019). This Court applies the standards applicable to claims under the Title VII of the Civil Rights Act. *See id.* Thus, to establish a hostile work environment claim, Harvin must show, inter alia, that "the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of . . . her work environment" and that the harassment was based on her protected group. *Petrosino v. Bell Atl.*, 385 F.3d 210, 221-22 (2d Cir. 2004). A "[p]laintiff must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). "[A] mild, isolated incident does not make a work environment hostile[.] [T]he test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003).

Harvin failed to state a claim for hostile work environment. Run-of-the-mill workplace conflicts, troubling though they may be, do not rise to the level of an objectively hostile workplace. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (holding that "the ordinary tribulations of the workplace, such as the sporadic use of abusive language," do not rise to a level constituting a hostile work environment); *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999) ("Isolated, minor acts or occasional episodes do not warrant relief."). Harvin alleged that Moore and Amerson were rude and hostile on various occasions, but these incidents reflect only fraught relationships with her supervisors. Further, only two of the many incidents could have referred to Harvin's disability, which is insufficient to state a claim for hostile work environment. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 713 (2d Cir. 1998) (occasional racist remarks,

though despicable, did not create a hostile work environment based on race). Harvin therefore does not allege facts sufficient to state a hostile work environment claim.

## IV. Retaliation

Claims for retaliation under the ADA are analyzed under the burden-shifting framework that is established for Title VII cases. *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). This framework requires "(1) participation in a protected activity; (2) that [the employer] knew of [plaintiff's] participation in that protected activity; (3) that [plaintiff] suffered an adverse employment action; and (4) that there exists a causal relationship between the protected activity and the adverse employment action." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010). To establish an adverse employment action in the retaliation context, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in [the retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). "Trivial harms," "slights," and "annoyances," do not constitute adverse acts. *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 568 (2d Cir. 2011). None of incidents described by Harvin rise to the level of an adverse action; at most they consist of interpersonal slights. Accordingly, the district court properly dismissed Harvin's retaliation claim.

We have reviewed the remainder of Harvin's arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

*Catherine O'Hagan Wolfe*

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

*Catherine O'Hagan Wolfe*

7